## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| JASON FINDLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:10-CV-98-TLS |
| | ) | |
| JON LENDERMON, in his individual | ) | |
| capacity as a Deputy Sheriff for the | ) | |
| Tippecanoe County Sheriff's Office, and | ) | |
| JASON HUBER, in his individual capacity | ) | |
| as Lieutenant for the Tippecanoe County | ) | |
| Sheriff's Office, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [ECF No. 21] filed

by the Defendants on March 27, 2012, and a Cross Motion for Partial Summary Judgment [ECF

No. 31] filed by the Plaintiff on May 21, 2012.

## PROCEDURAL BACKGROUND

On December 8, 2010, the Plaintiff, Jason Findlay, filed a Complaint [ECF No. 1] against

Defendant Jon Lendermon in his individual capacity as Deputy Sheriff of the Tippecanoe County

Sheriff's Office, raising claims for excessive force, false arrest, and wrongful seizure, all in

violation of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to

42 U.S.C. § 1983. On January 25, 2011, Defendant Lendermon filed an Answer [ECF No. 8]. On

August 17, 2011, the Plaintiff filed an Amended Complaint [ECF No. 14] against Defendant

Lendermon as before, and against Defendant Jason Huber in his individual capacity as

Lieutenant for the Tippecanoe County Sheriff's Office, raising claims for excessive force (Count I) and false arrest (Count II) against Defendant Lendermon, and a claim for wrongful seizure (Count III) against Defendants Lendermon and Huber. The Defendants filed an Answer [ECF No. 16] to the Amended Complaint on September 22, 2011.

On March 27, 2012, the Defendants filed a Motion for Summary Judgment [ECF No. 21] designating various exhibits, along with a Memorandum of Law in Support [ECF No. 22]. On May 21, after the Court granted the Plaintiff's requests for an extension of time in which to file a response to the Defendants' Motion, the Plaintiff filed a Cross Motion for Partial Summary Judgment [ECF No. 31] along with a Designation of Evidence [ECF No. 34] and a Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment [ECF No. 32], which was replaced by an Amended Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment [ECF No. 36-1] after the Court granted the Plaintiff's Motion for Leave to File Amended Plaintiff's Memorandum [ECF No. 36]. The Defendants filed a Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and Reply in Support of Motion for Summary Judgment [ECF No. 38] on June 7, 2012, and the Plaintiff, after the Court granted his requests for an extension of time in which to file a reply, filed a Reply Brief in Support of his Motion for Partial Summary Judgment [ECF No. 43] on June 29. The Motions for Summary Judgment are fully briefed and ripe for this Court's ruling.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). According to Federal Rule of Civil Procedure 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotation marks omitted).

## FACTUAL BACKGROUND

On September 25, 2009, the Plaintiff contacted the Tippecanoe County Sheriff's Department and requested that a law enforcement officer come to collect a field camera which the Plaintiff alleges had been abandoned on property belonging to his mother. The Plaintiff's

grandmother, Elizabeth Howey, resided on the property in question. Defendant Lendermon, a Deputy Sheriff, traveled to the property to investigate.

This was not the first time Defendant Lendermon had heard about the Plaintiff. The Plaintiff's uncle, Clark Howey, lived adjacent to the property, and had previously complained that the Plaintiff was trespassing on his property and was responsible for acts of vandalism. Further, Clark Howey's son-in-law, Aaron Lorton, a City of Lafayette Police Officer, had previously reported violence and threats by the Plaintiff against members of his family. It is undisputed that prior to September 25, 2009, Defendant Lendermon had received emails from Lorton complaining about threats, violent behavior, trespassing, and vandalism by the Plaintiff. (*See* Brown Aff. ¶ 4 & Exs. 1–4, ECF No. 21-6[1]; Lendermon Dep. 4:21–6:6, June 16, 2010.) Lorton had specifically requested additional Sheriff's Department patrols near his residence because he saw the Plaintiff as a threat and feared for the safety of his family.

As he traveled to the property, Defendant Lendermon spoke to Lorton, who advised him that the field camera found by the Plaintiff belonged to Lorton. Upon arrival at the property, Defendant Lendermon spoke to Clark Howey who informed Defendant Lendermon that he and Lorton had placed Lorton's field camera on his property to ascertain who had been trespassing. Clark Howey suspected the Plaintiff of the trespassing.

The Plaintiff arrived at the property shortly thereafter, and went immediately into the

---

[1]Brown's affidavit also contains Tippecanoe County Sheriff's Department incident reports relating to the Plaintiff and a description of the denial of the Plaintiff's application for a handgun license, but as there is no evidence that Defendant Lendermon had knowledge of those reports or the denied handgun license, and as the Defendants do not attempt to show how they are relevant to Defendant Lendermon's reasonable beliefs about the Plaintiff at the time of his encounter with the Plaintiff, the Court will not consider them.

house where his grandmother, Elizabeth Howey, resided. He emerged with a video camera and recorded his subsequent conversation with Defendant Lendermon. In that conversation, the Plaintiff showed Defendant Lendermon where he had recovered the field camera, told Defendant Lendermon his understanding of the property lines, and stated that he had been previously warned by his uncle, Clark Howey, against trespassing on his property. It is undisputed that the video recording made by the Plaintiff contains all of these factual admissions by the Plaintiff. At this point, the Plaintiff returned to his grandmother's house, and Defendant Lendermon went to his car. In the car, Defendant Lendermon consulted by telephone with Defendant Huber and also the Sheriff's Department dispatch officer, who advised Defendant Lendermon that, according to the county's GIS website, the spot where the field camera had been recovered was indeed on Clark Howey's side of the property line. Defendant Lendermon and Defendant Huber therefore agreed that Defendant Lendermon should confiscate as evidence the video camera on which the Plaintiff had just recorded his statements about where he recovered the field camera and his statements about previous warnings against trespassing given to him by Clark Howey.

Defendant Lendermon went to the house on the property to recover the video camera. Elizabeth Howey—the homeowner who was 87 years old at the time—and the Plaintiff invited Defendant Lendermon into the house. Defendant Lendermon joined the Plaintiff and Elizabeth Howey in a kitchen which contained a kitchen table and a washing machine. The video camera was sitting on the kitchen table and was still recording. When Defendant Lendermon informed the Plaintiff that he was confiscating the video camera as evidence, the Plaintiff pulled the camera away from Defendant Lendermon, and also pulled the memory card out of the camera.

At this point the recording stopped, and the testimony diverges. Undisputedly, the memory chip fell to the floor and ended up under the washing machine. Defendant Lendermon states that the Plaintiff threw the chip to the ground, while the Plaintiff states that he dropped it. In both versions, the Plaintiff then reached down for the chip.

Defendant Lendermon states that he then grabbed the Plaintiff's arm to prevent him from reaching and/or destroying the memory chip. In the Plaintiff's version, which is mostly corroborated by the testimony of Elizabeth Howey, when the Plaintiff bent down to retrieve the memory chip, Defendant Lendermon responded by grabbing him by the shoulders and tackling him to the ground so that his chest hit the floor. The Plaintiff also states that he landed at least in part on a bottle of laundry detergent. The Plaintiff reported pain from the incident, though when he went to the doctor a few days later on the advice of his attorney, the doctor reported no evidence of laceration, abrasion, bruising, or swelling. (Husain Report, ECF No. 21-5.) The Plaintiff also reported to the doctor that he "d[id]n't know if he landed flat on the floor or on a bottle of Tide." (*Id.*) The Plaintiff introduces evidence, through Elizabeth Howey's deposition, that Defendant Lendermon stated "I decided I don't want to have my pictures taken" before he tackled the Plaintiff. (E. Howey Dep. 5:16–17, ECF No. 34-3.) The Plaintiff also introduces Defendant Lendermon's deposition statement, in which Defendant Lendermon stated that the Plaintiff did not do or say anything that suggested he would destroy the evidence. (Lendermon Dep. 29:25–30:4, July 12, 2011, ECF No. 21-3.) The Defendants note that Elizabeth Howey's assertion about Defendant Lendermon's statement that he did not wish to be filmed is unsupported by the video evidence itself. The record does show that Defendant Lendermon made

a similar statement at the very beginning of his encounter with the Plaintiff, but not immediately before his seizure of the video camera.

Defendant Lendermon arrested the Plaintiff for resisting law enforcement, placing him in handcuffs. Defendant Lendermon later booked the Plaintiff for both resisting law enforcement and obstruction of justice. The briefs present conflicting statements as to whether a warrant was later obtained for the search of the video camera,[2] but it is undisputed the Defendant Lendermon seized it as evidence on September 25, 2009, before any warrant was obtained.

On July 23, 2010, the deputy prosecuting attorney dismissed all charges against the Plaintiff, stating that dismissal was "in the best interests of the State of Indiana." (Am. Compl. ¶ 21, ECF No. 14.) The Plaintiff initiated the present suit on December 8, 2010.

## DISCUSSION

The Plaintiff brought this civil action against the Defendants pursuant to 42 U.S.C. § 1983. Section 1983 imposes liability on any "person" who, while acting under color of state law, deprives an individual of federally protected rights. 42 U.S.C. § 1983. Section 1983 authorizes claimants to sue persons in their individual capacities who are alleged to have violated such rights. *Lewis v. Downey*, 581 F.3d 467, 472–73 (7th Cir. 2009). The Defendants seek summary judgment on all claims against them. The Plaintiff opposes the Defendants' summary judgment request, and also asks for summary judgment on Counts II and III. The Court

---

[2]*Compare* Plaintiff's Amended Memorandum in Opposition, ECF No. 36-1 at 5 ("no search warrant was ever sought or obtained by the Defendant") *with* Defendants' Response in Opposition, ECF No. 38 at 5 n.2 ("Officer Lendermon did not view the contents of the video camera until after the warrant had been obtained").

will analyze the parties' arguments for summary judgment on each of the three Counts. Because the Court finds that there are triable issues of material fact remaining with respect to the Count I excessive force claim, but that there are no triable issues of material fact with respect to the Count II false arrest or Count III wrongful seizure claims, the Court will deny summary judgment on Count I,[3] but will grant the Defendants' Motion for Summary Judgment with respect to Counts II and III.

The Plaintiff's argument in his Cross Motion for Partial Summary Judgment is, in essence, as follows: Defendant Lendermon had no legal basis to seize the video camera; therefore, Defendant Lendermon had no legal basis to arrest the Plaintiff; and therefore, any force used to effectuate the arrest was constitutionally impermissible. Because this is the structure of the Plaintiff's argument, the Court will analyze the claims in the same order, beginning with the wrongful seizure (Count III) claim, continuing with the false arrest (Count II) claim, and concluding with the excessive force (Count I) claim.

## A.       Count III—Wrongful Seizure

The Plaintiff maintains that Defendants Lendermon and Huber illegally seized his video camera and its memory chip, which constituted an unreasonable seizure under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. In their Motion for Summary Judgment, the Defendants argue that Defendant Lendermon was justified in seizing the video camera under

---

[3]As stated below, the Court will deny summary judgment on Count I as to the allegation that Defendant Lendermon used excessive force when he tackled the Plaintiff, but will grant summary judgment on Count I as to the allegation that Defendant Lendermon used excessive force in handcuffing the Plaintiff.

both the plain view and the exigency exceptions to the warrant requirement. The Plaintiff argues in his Cross Motion for Partial Summary Judgment that the third element of the plain view doctrine does not apply to the seizure of the camera, and thus that the plain view doctrine will not justify its seizure. The Plaintiff also argues that because Defendant Lendermon testified he had no reason to believe the Plaintiff would destroy the video evidence, the exigency exception does not apply. The Defendants argue that any wrongful seizure claim against Defendant Huber is foreclosed because Defendant Lendermon was justified in seizing the video camera, because there is no *respondeat superior* liability under § 1983, and because Defendant Huber's agreement with Defendant Lendermon did not negate the Plaintiff's possessory interest in the video camera.

Seizure of property without a warrant is justified if the seizure satisfies the probable cause standard of the Fourth Amendment. *See Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 66 (1992). Under the plain view doctrine, warrantless seizure of an item by a law enforcement officer is justified if: "(1) the officer was lawfully present in the place from where he viewed the item, (2) the item was in plain view, and (3) its incriminating nature was 'immediately apparent.'" *United States v. Schmidt*, — F.3d —, No. 12-1738, 2012 WL 5392623, at *4 (7th Cir. Nov. 6, 2012) (quoting *United States v. Cellitti*, 387 F. 3d 618, 623 (7th Cir. 2004)); *see also Horton v. California*, 496 U.S. 128, 135–36 (1990) (discussing plain view doctrine); *Arizona v. Hicks*, 480 U.S. 321, 325–26 (1987) (same). The incriminating nature of an item is immediately apparent where an officer has "probable cause to believe that the item is linked to criminal activity." *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997); *see also Schmidt*, 2012 WL 5392623,

at *4 ("'For the incriminating nature to be immediately apparent, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity.'" (quoting *Cellitti*, 387 F.3d at 624)). An item which is "not inherently incriminating" may be seized under the plain view doctrine when it "assumes an incriminating or suspicious nature in connection with the crime under investigation." *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998). So long as the officer did not violate the Fourth Amendment in getting to the spot from which the evidence is in plain view, "it does not matter that the officer who makes the observation may have gone to the spot from which the evidence was seen with the hope of being able to view and seize the evidence." *Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011). A "practical, nontechnical probability that incriminating evidence is involved is all that is required" for seizure under the plain view doctrine. *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quotation marks omitted).

In addition to the plain view doctrine, "the need 'to prevent the imminent destruction of evidence'" is an exigent circumstance sufficient to justify a warrantless search. *King*, 131 S. Ct. at 1856 (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).

Probable cause is an objective standard, and "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (quotation marks omitted); *see also King*, 131 S. Ct. at 1858 ("Our cases have repeatedly rejected a subjective approach, asking only whether the circumstances, viewed *objectively*, justify the action."

(quotation marks omitted)).

The Defendants argue that the plain view doctrine applies to the seizure of the Plaintiff's video camera because Defendant Lendermon was lawfully in the residence, because the camera was in plain view on the table, and because its evidentiary value was immediately apparent. The Plaintiff insists that the third prong of the plain view doctrine cannot be satisfied because the video camera was not evidence of a crime and therefore its evidentiary value was not immediately apparent. But the Defendants note that the video camera contained the Plaintiff's recitation of exactly where he found the field camera, along with the Plaintiff's admission that he had been previously warned by Howey against trespassing on his property. The Defendants argue this evidence was plainly linked to criminal activity because it could be used as evidence in a conversion case against the Plaintiff, and could be used as evidence in a trespass case against the Plaintiff or against Lorton, who had previously informed Defendant Lendermon that the camera was his. Indiana's trespass statute states that a person who:

> (1) not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent;
> [or] . . .
> (4) knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent;
> . . .
> commits criminal trespass, a Class A misdemeanor.

I.C. § 35-43-2-2(a). Furthermore, Indiana's conversion statute states that a person who "knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." *Id.* § 35-43-4-3(a). The Defendants also argue that whatever Defendant Lendermon's personal beliefs about the likelihood that the Plaintiff

would have destroyed the video evidence, it was objectively reasonable to believe that the Plaintiff would destroy the evidence, and thus seizure of the video camera was justified under the exigent circumstances exception to the warrant requirement.

The Court agrees with the Defendants that the plain view doctrine justified Defendant Lendermon's seizure of the video camera. It is undisputed that Defendant Lendermon was lawfully on the property where he observed what was recorded onto the video camera's memory chip, and that he was lawfully in the kitchen, having been invited in by the Plaintiff and Elizabeth Howey. It is also undisputed that the video camera was in plain view in the kitchen when Defendant Lendermon entered. The camera was sitting on the table, and was still recording. Finally, the Court finds that the evidentiary value of the video camera's memory chip was immediately apparent because Defendant Lendermon had first-hand knowledge that the chip contained evidence related to criminal activity. The Plaintiff's statements about where he had found the field camera, his understanding of the property lines, and his previous warnings from Howey against trespassing were all potentially relevant to Defendant Lendermon's investigation into the crimes of trespass and/or conversion.[4] Thus, Defendant Lendermon's knowledge of the contents of the memory chip established a "practical, nontechnical probability that incriminating evidence [wa]s involved," *Brown*, 460 U.S at 742, and justified Defendant Lendermon's seizure under the plain view doctrine. The incriminating nature of the video camera and its memory chip were immediately apparent because Defendant Lendermon had probable cause to believe that the

---

[4]The Court notes that the video camera evidence could have supported a case for trespass and conversion against the Plaintiff, against Clark Howey, or against Lorton. In any case, it was reasonable for Defendant Lendermon to seize it as evidence.

video camera and memory chip—though not inherently incriminating items—were linked to criminal activity within the context of his investigation. *Van Dreel*, 155 F.3d at 905. It does not matter that Defendant Lendermon obtained access to the kitchen with the intention of seizing the video camera. *See King*, 131 S. Ct. at 1858. The parties argue the case of *White v. State*, 517 N.E.2d 83 (Ind. 1987), which, though not binding on this Court, contains a helpful articulation of the plain view doctrine. As the *White* court stated, probable cause to seize an item under the plain view doctrine exists "if the facts available would warrant a man of reasonable caution in the belief that the item[] may be evidence of a crime." Here the Court finds that Defendant Lendermon had probable cause to seize the video camera and its memory chip because the facts available would warrant a man of reasonable caution in believing that the video camera and its memory chip might contain evidence of a crime. Therefore, because Defendant Lendermon was lawfully in the kitchen, because the video camera was in plain view, and because its evidentiary value was immediately apparent, the plain view doctrine justified Defendant Lendermon's seizure of the video camera.

The Court agrees with the Defendants, further, that a reasonable fear of destruction of the evidence also justified Defendant Lendermon's seizure of the video camera. The Plaintiff's adversarial manner and demeanor toward law enforcement suggested he might be inclined to erase the memory chip. He had filmed Defendant Lendermon's conduct from the beginning of his investigatory visit, but as Defendant Lendermon had done nothing reflecting poorly on law enforcement, the Plaintiff's incentive to keep the recording would have been small. The Plaintiff, once he realized the memory chip was required by law enforcement, would have had an

incentive to erase it because it locked him into the version of the events involving the field camera that was recorded on the memory chip. Finally, once the Plaintiff either dropped or threw the chip to the kitchen floor and made a move towards it with unknown intent, a reasonable officer might have believed the Plaintiff intended to destroy the evidence. For all these reasons, the need to prevent destruction of the evidence also justified Defendant Lendermon's seizure of the chip, whatever Defendant Lendermon's subjective belief about the possibility it would be destroyed. *See Devenpeck*, 543 U.S. at 153.

As to the claim against Defendant Huber, the evidence indicates that he merely agreed with Defendant Lendermon's assessment that the video camera should be seized as evidence.[5] The claim against Defendant Huber therefore lacks merit, first, because Defendant Lendermon did not violate the Fourth Amendment and so Defendant Huber's agreement also did not violate the Fourth Amendment. Additionally, the Plaintiff has failed to show how Defendant Huber could be liable for Defendant Lendermon's actions under a *respondeat superior* theory in the § 1983 context, and the Plaintiff has failed to show how Defendant Huber's mere agreement with Defendant Lendermon's assessment constituted an action depriving the Plaintiff of a possessory interest in the video camera. For all these reasons, the Court will grant summary judgment on the claim against Defendant Huber.

---

[5]The Plaintiff argues that Defendant Huber either authorized or instructed Defendant Lendermon to seize the video camera. But the only testimony cited by the Plaintiff on this point is Defendant Lendermon's deposition, where he clearly states that he had already decided to seize the camera, and that Defendant Huber "agreed." (Lendermon Dep. 26:2.) The Court does not find that mere agreement establishes the causal connection between Defendant Huber's action and an alleged constitutional violation required under *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983), cited by the Plaintiff on this point. *See Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir. 1997) (requiring "personal involvement" by defendants in order to support § 1983 claims against them).

Accordingly, as discussed above, the Court finds that a reasonable jury could only find that Defendant Lendermon's seizure of the Plaintiff's video camera was justified and did not violate the Fourth Amendment. The Court will therefore grant the Defendants' Motion for Summary Judgment as to Count III and deny the Plaintiff's Cross Motion for Partial Summary Judgment as to Count III.[6]

**B.      Count II—False Arrest**

The Plaintiff maintains that Defendant Lendermon illegally arrested him without probable cause, which constituted an unreasonable seizure under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. In their Motion for Summary Judgment, the Defendants argue that       an action for false arrest fails where probable cause exists, and that Defendant Lendermon had probable cause to arrest the Plaintiff for resisting law enforcement, obstruction of justice, refusing to assist a law enforcement officer, trespass, and conversion. Although Defendant Lendermon only arrested the Plaintiff for resisting law enforcement, and only booked him for resisting law enforcement and obstruction of justice, the Defendants argue that, because probable cause is an objective standard, the Plaintiff's false arrest claim will fail as long as

---

[6]In his Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment, the Plaintiff attempts to argue that seizure of the video camera also violated the First Amendment because he had a right to film a law enforcement officer conducting his duties. The Court finds this new argument, not raised until the Reply, has been waived because the Defendants had no opportunity to respond to it. Further, the Court finds this new argument irrelevant because the facts do not suggest that the Plaintiff was prohibited from exercising his right to film a law enforcement officer conducting his duties. On the contrary, the facts merely show that after the Plaintiff had filmed a law enforcement officer, the law enforcement officer then seized the camera because its evidentiary value had become immediately apparent.

probable cause existed to believe the Plaintiff had committed any of the five offenses listed above. The Plaintiff argues that, because Defendant Lendermon was not lawfully in the execution of his duties when he seized the camera, Defendant Lendermon did not have probable cause to arrest him for resisting law enforcement under the Indiana statute. The Plaintiff further argues that Defendant Lendermon did not have probable cause to arrest him for obstruction of justice because the Plaintiff wanted to preserve, not destroy, the evidence recorded on the video camera. Finally, the Plaintiff offers various other arguments for why Defendant Lendermon lacked probable cause to arrest him for refusal to obey an officer, trespass, or conversion.

"The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim." *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011); *Fernandez v. Perez*, 937 F.2d 368, 370 (7th Cir. 1991). Law enforcement officers have probable cause to arrest a suspect when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). Probable cause does not require "[']evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (quoting *United States v. Carillo*, 269 F.3d 761, 766 (7th Cir. 2001)).

Indiana's resisting law enforcement statute states that a person who "knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a

person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor." I.C. § 35-44.1-3-1(a). Indiana's obstruction of justice statute states that a person who "alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation . . . commits obstruction of justice, a Class D felony." *Id.* § 35-44.1-2-2(a). Indiana's refusal to aid an officer statute states that any person who "when ordered by a law enforcement officer to assist the officer in the execution of the officer's duties, knowingly or intentionally, and without a reasonable cause, refuses to assist commits refusal to aid an officer, a Class B misdemeanor." *Id.* § 35-44.1-3-3. The Court has previously set forth Indiana's conversion and trespass statutes.

The Court agrees with the Defendants that Defendant Lendermon had probable cause to arrest the Plaintiff, and accordingly, the Plaintiff's false arrest claim fails.

First, Defendant Lendermon had probable cause to arrest the Plaintiff for resisting law enforcement. Defendant Lendermon was lawfully engaged in the execution of his duties. Defendant Lendermon ordered the Plaintiff to give him the video camera and its memory chip. The Plaintiff responded by pulling the video camera away from Defendant Lendermon, and then by pulling the memory chip out of the video camera to prevent Defendant Lendermon from getting it. The Plaintiff forcibly resisted, obstructed, and interfered with Defendant Lendermon in the lawful execution of his duties. As previously discussed, the Plaintiff is incorrect to suggest that Defendant Lendermon's actions in seizing the video camera were unlawful. Accordingly, Defendant Lendermon was lawfully engaged in the execution of his duties, and Defendant

Lendermon had probable cause to arrest the Plaintiff for resisting law enforcement, the crime for which he actually arrested and booked the Plaintiff. Because Defendant Lendermon had probable cause to arrest the Plaintiff, the Plaintiff's false arrest claim fails.

Second, Defendant Lendermon had probable cause to arrest the Plaintiff for obstruction of justice. After Defendant Lendermon told the Plaintiff to give him the camera because he needed what was recorded on it, the Plaintiff stated that he could have the camera but not the chip. The Plaintiff then removed the chip from the video camera and either dropped or threw the chip onto the floor. The Plaintiff knew that the recording on the chip was required as evidence in Defendant Lendermon's investigation, but chose to remove the chip to prevent turning it over to law enforcement. Accordingly, the Plaintiff removed a record with intent to prevent it from being produced or used as evidence in an official investigation. The Plaintiff argues no probable cause for obstruction of justice existed because he had no intention of destroying the evidence, and intended rather to preserve the evidence so that Defendant Lendermon would not be able to testify falsely. But the Plaintiff's argument, even if true, does not address the text of the statute, which makes it a crime to alter, damage, or remove evidence. Here, even if the Plaintiff did not intend to alter or damage the evidence, he plainly showed his intention to remove it. Moreover, even if the Plaintiff's subjective intent was not to alter or damage the evidence, the objective impression formed by a reasonable officer would still have been that the Plaintiff's actions in removing the chip, dropping or throwing it to the floor, and making a move towards it with unknown intent, showed an intention to alter or damage the evidence. For all these reasons, Defendant Lendermon had probable cause to arrest the Plaintiff for obstruction of justice, one of

the two crimes for which he actually booked the Plaintiff. The existence of probable cause for this offense also defeats the Plaintiff's false arrest claim.

Third, Defendant Lendermon had probable cause to arrest the Plaintiff for refusal to aid an officer. Defendant Lendermon had specifically instructed the Plaintiff to turn over the video camera but instead the Plaintiff had withheld it. Having been ordered by a law enforcement officer in the execution of his duties to assist with those duties, the Plaintiff had intentionally, and without a reasonable cause, refused to aid. The Plaintiff argues that he had a reasonable cause to refuse to aid Defendant Lendermon in that he wished to preserve his recording of his interactions with Defendant Lendermon. Therefore, the Plaintiff argues, he reasonably withheld the chip from Defendant Lendermon to prevent the Sheriff's Department from destroying it. The Court finds that the Plaintiff's argument misses the point. The issue for purposes of the false arrest claim is not whether there existed sufficient evidence to convict the Plaintiff of the crime of refusal to aid an officer. *Funches*, 327 F.3d at 586. The issue, instead, is whether the facts as viewed by an objective officer would convince a "prudent person" that the Plaintiff had committed the offense of refusing to aid an officer. *Mustafa*, 442 F.3d at 547. The Court finds that they would. It does not matter that Defendant Lendermon did not actually arrest the Plaintiff for refusing to aid an officer. *Sroga*, 649 F.3d at 608. For these reasons, the Court concludes that probable cause existed to believe that the Plaintiff had committed the offense of refusal to aid an officer, and because probable cause existed, no reasonable jury could find for the Plaintiff on his false arrest claim.

Fourth, Defendant Lendermon had probable cause to arrest the Plaintiff for trespass.

Defendant Lendermon knew of the prior complaints filed by Clark Howey against the Plaintiff for trespassing and vandalism. Defendant Lendermon knew exactly where the Plaintiff had gone to retrieve the field camera. Further, Defendant Lendermon knew from the county dispatcher that—according to the GIS website—the place where the Plaintiff retrieved the camera was in fact on Clark Howey's property. Finally, Defendant Lendermon knew from the Plaintiff's admission that the Plaintiff had been previously warned against trespassing by Clark Howey. The only question is whether Defendant Lendermon had probable cause to believe that the Plaintiff's act of trespass was knowing or intentional. Based on the Plaintiff's antagonistic manner towards law enforcement, Defendant Lendermon's knowledge of multiple trespass claims by Clark Howey—an apparently credible witness, and Clark Howey's specific assertion that the Plaintiff was trespassing, the Court finds that Defendant Lendermon had probable cause to believe the Plaintiff had committed the offense of trespass. *See Mustafa*, 442 F.3d at 544 ("Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect."). The Plaintiff argues that he could not have committed the crime of trespass because, under his version of the facts, he was not trespassing. The Court reiterates that the issue is not whether the Plaintiff could actually be convicted of trespass, but rather whether Defendant Lendermon had probable cause to believe the Plaintiff had committed the crime of trespass. The Court finds that he did. Indeed, the Plaintiff himself appears to have believed the video camera contained evidence. When asked at his deposition whether Defendant Lendermon had a reason for taking the video camera, the Plaintiff responded: "Because it contained evidence of other crimes." (Findlay Dep. 62:18–19,

July 13, 2011, ECF No. 21-2.) And once again, although Defendant Lendermon did not actually arrest the Plaintiff for this offense, the existence of probable cause defeats the Plaintiff's false arrest claim.

Fifth, because the Court finds that Defendant Lendermon had probable cause to arrest the Plaintiff for resisting law enforcement, obstruction of justice, refusal to aid an officer, and trespass, it need not decide whether probable cause also existed to arrest the Plaintiff for conversion. The Plaintiff argues that probable cause did not exist to believe he had committed conversion of Lorton's field camera because no evidence suggests the Plaintiff knew whose camera it was. Indeed, the reason Defendant Lendermon came to the scene in the first place was that the Plaintiff had notified law enforcement about an abandoned field camera. The Defendants argue that because the Plaintiff must have known he was trespassing, he also must have known that the field camera was someone else's property, and thus probable cause existed to arrest him for the crime of conversion. The Defendants have not cited a case where probable cause was established for conversion on similar facts, and on this point the Court finds that the Plaintiff has the better argument. The Court does not find that Defendant Lendermon had probable cause to arrest the Plaintiff for the crime of conversion.

For all the reasons discussed above, the Court finds that Defendant Lendermon had probable cause to arrest the Plaintiff for resisting law enforcement, obstruction of justice, refusal to aid an officer, and trespass. Accordingly, no reasonable jury could find for the Plaintiff on his false arrest claim, and the Court will grant the Defendants' Motion for Summary Judgment on Count II.

**C.      Count I—Excessive Force**

The Plaintiff claims that Defendant Lendermon used excessive and unreasonable force in arresting him, which constituted an unreasonable seizure under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. In their Motion for Summary Judgment, the Defendants argue that the small amount of force allegedly used by Defendant Lendermon—here a tackle[7] followed by handcuffing— was objectively reasonable under the circumstances. The Plaintiff maintains that the significant dispute of fact about the manner in which he was arrested is material, and this claim must go to a jury. Because the Court concludes that a reasonable jury could find for the Plaintiff on his version of the facts, the Court will deny the Motion for Summary Judgment as to the Count I allegation that Defendant Lendermon tackled the Plaintiff.

A claim that a police officer has used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen is analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). "A seizure for purposes of the Fourth Amendment is unreasonable if it is accomplished through the use of excessive force." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). "An officer's use of force is unreasonable from a constitutional point of view only if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Id.*

---

[7]The Defendants do not admit that Defendant Lendermon actually tackled the Plaintiff in effectuating an arrest. Defendant Lendermon maintains that he merely held the Plaintiff by the arms and arrested him. However, as the Defendants acknowledge, the Court at this stage must accept as true the Plaintiff's version of the facts. And in the Plaintiff's version of the facts, Defendant Lendermon tackled the Plaintiff.

at 539 (quotation marks omitted). The reasonableness inquiry involves a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). In deciding whether the force used by a law enforcement officer is reasonable, a court must balance several factors:

> [W]e consider factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' We also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. In the end, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended.

*Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (other internal quotation marks and citations omitted). However, the test "is an objective one, where the officer's subjective good or bad intentions do not enter into the analysis." *Jacobs*, 215 F.3d at 773. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers[,] violates the Fourth Amendment.[']" *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011) (quoting *Graham*, 490 U.S. at 396–97). A plaintiff "need not show physical injury in order to sustain an excessive force claim." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009).

The Plaintiff argues that because Defendant Lendermon did not have probable cause to arrest him, any force used to effectuate his arrest was per se unreasonable. *See Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008) ("In the absence of probable cause, [the officer] was not justified in using any force against [the plaintiff]."); *Gaddis v. Redford Twp.*, 364 F.3d 763, 772

(6th Cir. 2004) ("[E]ven minor uses of force are unconstitutionally excessive if they are totally gratuitous." (quotation marks omitted)). *Cf. Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."). The Court rejects this argument because it has already found that Defendant Lendermon had probable cause to arrest the Plaintiff for multiple offenses. Accordingly, the question is whether a reasonable jury could find that the force Defendant Lendermon used to arrest the Plaintiff was constitutionally impermissible.

The Defendants argue that the force Defendant Lendermon used was reasonable because he had to act as he did in order to preserve the memory chip. As the Defendants state in their brief:

> In this case, there was a single tackle by Officer Lendermon, initiated from a short distance away after he was confronted with an individual who had refused a request to turn over <u>evidence</u>, had announced his intention to withhold <u>evidence</u>, was physically preventing the officer from securing the <u>evidence</u> and was engaged in activity that put the <u>evidence</u> at risk. The physical contact took place after Mr. Findlay made a move with unknown intent toward the <u>memory chip</u> he had caused to fall to the ground.

(Mem. of Law in Supp. of Mot. for Summ. J. 20, ECF No. 22 (emphasis added).) This consistent argument—that the force allegedly used by Defendant Lendermon was necessary to preserve evidence—is not supported by any case cited by any party.

The Defendants also offer an undeveloped argument concerning the potential danger the Plaintiff posed to Defendant Lendermon. They note that Defendant Lendermon knew of past reports of trespassing, vandalism, and violent behavior by the Plaintiff. They posit that Defendant Lendermon's actions were reasonable because he was alone with no backup. They

also argue—again in the context of the preservation of the evidence—that if Defendant Lendermon had bent down to retrieve the memory chip he would have become vulnerable to the Plaintiff. The Defendants do not attempt to explain why tackling the Plaintiff, as both the Plaintiff and Elizabeth Howey[8] allege, was an appropriate means of securing the evidence instead of merely restraining the Plaintiff and ensuring that he did not get to the chip.[9]

The Defendants cite several cases in support of their argument that the force allegedly used by Defendant Lendermon was reasonable as a matter of law. First, the Seventh Circuit in *Padula*, 656 F.3d 595, found force to be reasonable where officers, believing a suspect in a car to be intoxicated, pulled him from the vehicle, used mace spray and "stern" baton strikes to try to control him in the struggle, and held him in a prone position. 656 F.3d at 603–04. The Court distinguishes *Padula* because the officers in that case were concerned with public safety. They used force in order to get a suspect who they believed to be intoxicated out from behind the wheel, and they pulled him from the vehicle but did not throw him to the ground. *Id.* at 603. By contrast, the Defendants do not argue that Defendant Lendermon was concerned with public safety, and, accepting as true the Plaintiff's verison of events, Defendant Lendermon did throw the Plaintiff to the ground. Next, the Defendants point to *Smith v. Ball State University*, 295 F.3d

---

[8]The Defendants argue that the testimony of Elizabeth Howey lacks foundation because of her age, and is duplicative of the Plaintiff's testimony. The Defendants have not filed a motion to strike her deposition testimony from the Court's consideration on summary judgment. The Court finds that the Defendants have not shown that Elizabeth Howey's deposition testimony is lacking in foundation. Nor is it identical to the Plaintiff's testimony. Accordingly, the Court will consider her deposition testimony, giving it the weight it deserves.

[9]Indeed, restraining the Plaintiff and ensuring that he did not get to the chip, without the use of a tackle, is exactly what Defendant Lendermon claims he did.

763 (7th Cir. 2002), in which the Seventh Circuit found force to be reasonable where officers pulled a driver they believed to be intoxicated[10] out of his vehicle, and, perceiving that the driver was struggling, one officer attempted to apply a knee strike to the driver, resulting in the officer tackling the driver. The Court also distinguishes *Ball State* because the officers in that case were concerned with acting to protect the public from what they perceived to be a drunk driver. *Id.* at 770. Further, the *Ball State* officer who tackled the driver did so because he was concerned with the safety of the other officers on the scene against whom he believed the driver was offering resistance. By contrast, Defendant Lendermon does not argue that he was concerned with public safety, nor does he develop his arguments concerning officer safety. Finally, the Defendants cite to *Leiter v. Bumbaugh*, No. 3:10-CV-320 RM, 2012 WL 33021 (N.D. Ind. Jan. 4, 2012), in which Judge Miller found officer use of force reasonable where the officers removed a subject from his vehicle, again perceiving a driver to be intoxicated when he was in fact diabetic. The driver of the vehicle failed to stop while he was pursued for more than two minutes by police, and so the officers removed him from his vehicle by striking his forearm, causing him to release his grip on the wheel. Again, the Court distinguishes *Leiter* because the officers in that case were concerned for the safety of the driver, of the public, and of the officers on the scene. *Id.* at *7. They acted quickly in order to neutralize the threat to the safety of many individuals. The Defendants' argument, by contrast, suggests that Defendant Lendermon acted quickly in order to neutralize the threat to the safety of the evidence. The cases cited by the Defendants do not support their legal theory.

---

[10]In both *Padula* and *Ball State*, the drivers were in fact diabetic, not intoxicated.

The relevant factors, listed by the *Graham* court, are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Here the crime at issue was not severe—at most it was obstruction of justice by withholding a video camera and memory chip with evidence relating to the misdemeanor of trespass. As discussed above, the Defendants have offered no argument that the Plaintiff posed a threat to the safety of any member of the public, and an undeveloped argument that he posed a threat to Defendant Lendermon's safety. And there is no evidence that the Plaintiff's attempt to resist turning over the chip rose to the level of an attempt to resist arrest or evade arrest by flight. The excessive force analysis, "[i]n the end, . . . looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *Jacobs*, 215 F.3d at 773 (quotation marks omitted). Because the Court finds that the Defendants have not shown how the Plaintiff posed a danger to the community or to the arresting officer, summary judgment is not appropriate on this claim. A reasonable jury could find that tackling the Plaintiff when he was not engaged in a severe crime, was not threatening either the officer or others, and was not resisting arrest or attempting to evade arrest by flight, constituted excessive and unreasonable force. The Court will therefore deny the Defendants' Motion for Summary Judgment on Count I as to the Plaintiff's claim that Defendant Lendermon tackled him as part of the arrest.[11]

---

[11]The Defendants argue that the use of handcuffs on the Plaintiff does not constitute excessive force as a matter of law because the Plaintiff did not show that any injury whatsoever resulted from use of the handcuffs. *See Tibbs v. City of Chi.*, 469 F.3d 661, 666 (7th Cir. 2006) (finding "mild allegations" of wrist discomfort from handcuffing did not constitute unreasonable force as a matter of law). The Plaintiff

**D.      The Qualified Immunity Defense**

The Defendants argue that the doctrine of qualified immunity protects them from liability because they did not violate the Plaintiff's clearly established constitutional rights. The Plaintiff argues that the Defendants waived qualified immunity as an affirmative defense by not specifically stating it in the Answer, and argues that the Defendants' qualified immunity affirmative defense fails because they did violate his clearly established constitutional rights.

The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). When evaluating a claim of qualified immunity, courts consider (1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right was clearly established at the time of the defendant's alleged violation. *Id.* Courts may address these two questions in the order they believe best suits "the circumstances of the particular case at hand." *Id.* Qualified immunity is a fact-intensive analysis. *See Ienco v. City of Chi.*, 286 F.3d 994, 1001 (7th Cir. 2002). In considering whether a constitutional violation occurred, courts examine the facts in a light most favorable to the party asserting an injury. *Gonzalez*, 578 F.3d at 540. Violation of a constitutional right may be clearly established either because "the violation is

does not rebut the Defendants' argument on this point. Accordingly, the Court will grant the Defendants' Motion for Summary Judgment with respect to the Plaintiff's claim in Count I that Defendant Lendermon used excessive force in handcuffing him as part of the arrest.

Finally, because a plaintiff "need not show physical injury in order to sustain an excessive force claim," *Baird*, 576 F.3d at 344, the Court does not find the Plaintiff's lack of physical injury to be dispositive on the issue of excessive force.

so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional." *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001).

As an initial matter, the Court does not find that the Defendants have waived qualified immunity by asserting in their Answer as an affirmative defense that they are "immune from suit as to the alleged actions." (Answer to Am. Compl. 7, ECF No. 16.) Indeed, the Seventh Circuit has stated that a motion for summary judgment is "the most appropriate time" to raise the defense of qualified immunity. *Walsh v. Mellas*, 837 F.2d 789, 800 n.7 (7th Cir. 1988).

As to the merits of the qualified immunity defense, the Court has already held that the Plaintiff's allegations in Count I make out a deprivation of his constitutional right to be free from excessive force. The Court finds that, viewing the facts in a light most favorable to the Plaintiff, the right to be free from the kind of constitutionally excessive force alleged in the Complaint was clearly established at the time of Defendant Lendermon's alleged violation. *See McAllister*, 615 F.3d at 886 (finding that the degree of force alleged constituted an unreasonable search and seizure "beyond the bounds of the plaintiff's clearly established Fourth Amendment rights" and therefore denying qualified immunity); *Gray v. City of Hammond, Ind.*, 693 F. Supp. 2d 823, 845 (N.D. Ind. 2010) (finding that the right to be free from constitutionally excessive force is clearly established). Consequently, the Court finds that the doctrine of qualified immunity does not warrant summary judgment in favor of the Defendants on the Plaintiff's § 1983 claims, and the Defendants' Motion for Summary Judgment will be denied as to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment [ECF No. 21]. Specifically, the Defendants' Motion is DENIED as to the Plaintiff's excessive force claim predicated on the tackle in Count I, but GRANTED as to the Plaintiff's excessive force claim predicated on the handcuffing in Count I, as to the Plaintiff's false arrest claim in Count II, and as to the Plaintiff's wrongful seizure claim in Count III. Furthermore, the Court DENIES the Plaintiff's Cross Motion for Partial Summary Judgment [ECF No. 31]. By a separate order, the Court will set this matter for a status conference.

SO ORDERED on November 28, 2012.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION